RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0295p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

MATTHEW OTIS CHARLES,

*Defendant-Appellee.*

No. 15-6074

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:96-cr-00051—Kevin H. Sharp, Chief District Judge.

Argued: December 1, 2016

Decided and Filed: December 19, 2016

Before: GIBBONS, SUTTON, and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Cecil W. VanDevender, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellant. Anne-Marie Moyes, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellee. **ON BRIEF:** Cecil W. VanDevender, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellant. Anne-Marie Moyes, Mariah A. Wooten, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. Matthew Charles sought and obtained a reduced sentence under guidelines amendments 706 and 750, which lowered the recommended sentencing ranges for crack cocaine offenses. Charles acknowledges that, if the original sentencing court found

1

him to be a career offender, these amendments would not decrease his guidelines range and thus would not permit a sentence reduction.   Because a panel of this court previously held that Charles was a career offender on his direct appeal, we reverse.

Twenty years ago, a jury found Charles guilty of several drug and firearm offenses, including conspiracy to distribute crack cocaine and unlawful distribution of crack cocaine. 18 U.S.C. § 841(a)(1); 21 U.S.C. § 846.   The presentence report found that Charles' total offense level was 38 points, due to the quantity of crack cocaine (216 grams), a two-point enhancement for obstruction of justice (U.S.S.G. § 3C1.1), and a two-point firearm enhancement (U.S.S.G. § 2D1.1(b)(1)).   The report found that Charles had 17 criminal history points, resulting in a criminal history category of VI.   The report added that Charles "appears to meet the criteria for both career offender and armed career criminal."   App. R. 6 at 15–16.   After factoring in these adjustments, the report listed a sentencing range of 360 months to life and recommended a sentence at the low end of that range.

Charles objected to the amount of cocaine used in the guidelines calculation, the enhancement for obstruction of justice, and the firearm enhancement.   He did not object to the report's classification of him as a career offender or an armed career criminal.

The district court adopted the factual findings of the presentence report.   The court also adopted the recommended guidelines range of 360 months to life, but varied upward and imposed a 420-month sentence based on Charles' background and misconduct.   Charles appealed, and we affirmed.   We determined on appeal that the sentencing court had concluded that Charles was a career offender, and that this determination mooted any challenge to the quantity of drugs used in calculating his sentence.   *United States v. Charles*, 138 F.3d 257, 268 (6th Cir. 1998).

Ten years later, the Sentencing Commission retroactively amended the sentencing guidelines to lessen the disparity between penalties for crack and powder cocaine offenses.   *See* U.S.S.G. Manual app. C, amend. 706 (effective Nov. 1, 2007); *id.*, amend. 713 (effective Mar. 3, 2008) (making Amendment 706 retroactive).   The amendment reduced the guidelines range otherwise applicable to Charles' drug crimes.

In 2008, Charles moved for a sentencing reduction. *See* 18 U.S.C. § 3582(c)(2). The government opposed the reduction on the ground that Charles was a career offender. The district court did not act on the motion. In 2010, Congress again amended and lowered the guidelines for crack cocaine offenses. *See* U.S.S.G. Manual app. C, amend. 750 (effective Nov. 1, 2011); *id.*, amend. 759 (effective Nov. 1, 2011) (making Amendment 750 retroactive). Charles filed a second § 3582(c)(2) motion in October 2011, this time relying on Amendment 706 and the newly promulgated Amendment 750. The district court did not rule on the motion. Charles submitted a letter to the court in January of 2013, seeking resolution of his first or second motion. Three more months passed, and Charles filed a third § 3582(c)(2) motion. In June 2013, Charles sent yet another follow-up letter. In April 2014, the court asked the government to respond to Charles' second and third motions. The government once again opposed the reduction on the ground that Charles was a career offender. The court nonetheless granted Charles' third motion and reduced his sentence from 420 to 292 months.

The government appealed.

Federal courts as a general matter may not modify an individual's term of imprisonment. 18 U.S.C. § 3582(c). But that black-letter principle yields to some exceptions. One of them applies when the term of imprisonment is "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," the body empowered to promulgate the Sentencing Guidelines. 18 U.S.C. § 3582(c)(2); *see* 28 U.S.C. §§ 991, 994(a). In that setting, the court may reduce the sentence if the "reduction is consistent with" applicable Commission policy statements. 18 U.S.C. § 3582(c)(2). The policy statements in turn say that resentencing is not appropriate where the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). In making a reduction, the court may address only the amended guideline; it may not alter other sentencing rulings. *Id.* § 1B1.10(b)(1).

Charles' motion hinges on his original sentence and direct appeal and whether he has already been deemed a career offender. If he is a career offender, all agree that the amendments would have no effect, and he would not be eligible for a reduction. If the district court relied only on the crack cocaine guidelines in sentencing him originally, and did so without deciding

whether he was a career offender, we would need to decide whether applying the designation now would impermissibly alter that court's "guideline application decisions." U.S.S.G. § 1B1.10(b)(1).

The short answer is that our court has already ruled on the point. In Charles' direct appeal, we determined that the original sentencing court found Charles was a career offender. *Charles*, 138 F.3d at 268. That makes him ineligible for this sentencing reduction and requires us to reverse the district court's contrary decision.

The long answer adds these details. In his direct appeal to this court, Charles argued that the district court erred in the amount of drugs it attributed to him. A panel of this court responded that the disputed drug quantity would affect Charles' sentence only if he was *not* a career offender. It then determined that "[t]he district court [had] found that Charles met all three criteria and qualified as a career offender as a result of his multiple prior felony convictions." *Id.* It thus concluded that, "[b]ecause the sentence range would be identical even if this court adopted Charles' assertions on the proper amount of drugs he sold, any calculation errors on the part of the district judge would constitute harmless error." *Id.* Charles did not file a petition for rehearing in this court or a petition for a writ of certiorari in the Supreme Court.

That ruling was binding on the district court in later phases of the case. If it is important for courts to treat like matters alike in different cases, it is indispensable that they "treat the same litigants in the same case the same way throughout the same dispute." Bryan A. Garner et al., *The Law of Judicial Precedent* 441 (2016). Known as the law of the case, this doctrine mandates that the district court adhere to rulings of the appellate court issued earlier in the case. *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015). In this instance, there is no dispute that our court held on direct appeal that "[t]he district court found that Charles met all three criteria and qualified as a career offender." *Charles*, 138 F.3d at 268. That decision was binding on the district court and precluded Charles from obtaining a reduction in his sentence under § 3582(c)(2).

Like many rules, this one has exceptions. Courts need not adhere to the law of the case in the face of an intervening change in law, new evidence, or a manifest injustice. *Howe*, 801 F.3d

at 741; *see* Garner, *supra*, at 480–89.  But none of these exceptions applies here.  There is no intervening law about the meaning of a career offender as it applies to sentencing reductions, and indeed Charles points to none.  There is no new evidence about whether Charles was a career offender, and indeed Charles points to none.  And it would not be a miscarriage of justice to treat Charles as a career offender based on the law in existence in 1996.  Consider some of the descriptions of Charles' many prior offenses:  kidnapping a woman on two consecutive days "for the purpose of terrorizing her"; burglarizing a home; and fleeing from a police interrogation, shooting a man in the head, and attempting to run off in the victim's car.  App. R. 6 at 16–21.

Not even Charles, it's worth pointing out, originally thought his treatment as a career offender would be unfair (or for that matter a manifest injustice).  Even after the presentence report said that "Charles is a career criminal," *id.* at 5, Charles did not object to his career-offender status during sentencing, and he objected to the introduction of his prior convictions only as somehow irrelevant but not as wrongly described.  Nor did Charles challenge our court's decision on direct appeal, even though it rested on his status as a career offender.  Charles, notably, did not object to his career offender status until March of 2013—almost 17 years after the initial presentence report and only after the Sentencing Commission's 706 and 750 Amendments.  On top of all that, Charles has *admitted* that he was a career offender in numerous filings, including a letter submitted as late as June of 2013.  On this record, it assuredly does not work a manifest injustice to accept this court's prior determination (and Charles' prior admissions) that Charles is (and was determined at sentencing to be) a career offender.

Charles argues that the government forfeited this argument by not making it below.  We disagree.  Time and time again, the government responded to Charles' § 3582(c)(2) motions for a sentencing reduction by saying he was not eligible for it because he was a "career offender."

In its first filing below in response to Charles' § 3582(c)(2) motion, the government said: "The defendant is a career offender.  The defendant's motion should be denied because the amendments to the crack sentencing guidelines do not have the effect of lowering the defendant's guideline range, which remains 360 months to life.  . . . Amendment 706 did not change the career offender guideline."  R. 168 at 4.  It closed this portion of its brief in much the same way, emphasizing that, "[a]s a career offender," Charles' "guidelines range remains

unchanged at 360 months to life." *Id.* at 5. "Because the amendment to subsection (c) does not have the effect of lowering [his] applicable guidelines range," it concluded, "a reduction in [Charles'] term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2)." *Id.*

In its second filing below, it said more of the same. "[T]he court," the government argued, does not have authority "to resentence the defendant under 18 U.S.C. § 3582(c) because the amendments do not have the effect of lowering [Charles'] guidelines range." R. 170 at 2. "As discussed, . . . [Charles] is a career offender, and the amendments to the U.S.S.G. did not change the career offender guidelines. . . . [H]is guidelines range is 360 to life when combined with a total offense level of 38 *or* 37. Thus Amendment 706 would have had no effect on [his] status as a career offender, and would not have changed the sentencing range applicable to him." *Id.* at 2 n.3.

By the time of its third filing below, any pretense of suspense about the government's position was gone. No surprise, it said the same thing again: "Because [Charles] is a career offender and was sentenced as such, and because the FSA unquestionably does not lower [his] guidelines range, [Charles'] motions for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) should be denied." R. 181 at 4.

Charles' § 3582(c)(2) filings, notably, admit explicitly in some places and implicitly in others that he is a career offender. His initial reply brief states: "Charles qualifies as a career offender." R. 169 at 5. His sur-sur-reply follows the same line, admitting that his sentencing range is 360 months to life even after the amendments. In Charles' second motion, he says that "[t]he Court based [his] sentence off of several factors such as the relevant drug amount . . . *and career offender classification*." R. 173 at 1 (emphasis added). And he acknowledges that "the Sixth Circuit Court of Appeals denied [his] arguments based on the career offender designation." *Id.* at 1–2. And in Charles' January 2013 letter to the court, he acknowledges his status as a career offender, closing with a request that the court reduce his sentence to correspond with the "216 grams of crack cocaine *and career offender classification*." R. 175 at 2 (emphasis added).

Charles claims that the government forfeited the law-of-the-case argument because it did not cite our prior ruling that the original sentencing court found him to be a career offender. In

one of its responses to Charles' motion for a reduction in sentence, the government said that the "Defendant appealed his convictions and sentence, and the Court of Appeals affirmed the judgment in 1998." R. 181 at 2. At any rate, a missed citation to legal authority does not establish a forfeiture of an *argument*. The key point is that the government argued that Charles had already been found to be a career offender, which sufficed to reject his § 3582(c)(2) motion. The failure to cite *additional* authority for a point does not a forfeiture make, particularly in view of Charles' admissions about that point, one of which mentioned the very prior decision that governs the issue. *See Leonor v. Provident Life & Acc. Co.*, 790 F.3d 682, 687 (6th Cir. 2015); *Dixon v. ATI Ladish LLC*, 667 F.3d 891, 895 (7th Cir. 2012).

Charles, last of all, claims that, even if this court held that he was a career offender on direct review, he is not—in truth—a career offender. But a § 3582(c)(2) motion is not the proper vehicle for making such an argument. U.S.S.G. § 1B1.10(b)(1); *United States v. Hunter*, 427 F. App'x 469, 472 (6th Cir. 2011). If Charles wishes to pursue a challenge to his career offender designation on the basis of *Johnson v. United States*, 135 S. Ct. 2551 (2015), or any other case, he must use a § 2255 motion for doing so.

For these reasons, we vacate the district court's judgment and remand for purposes of entering an order that rejects Charles' § 3582(c)(2) motion.